**Shelly WIGGINS, as next friend for her minor son, Michael WIGGINS, a minor, Petitioners,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 89–2–V.

United States Claims Court.

June 30, 1989.

Vincent R. Petrucelli, Iron River, Mich., as Atty. of Record, for petitioners.

Charles R. Gross, Washington, D.C., with whom were Asst. Atty. Gen. John R. Bolton, and Deputy Director John Lodge Euler, for respondent.

OPINION *

LYDON, Senior Judge:

This child vaccine case, one of first impression for the court, is filed pursuant to

---

* This decision may contain information that may not be disclosed to a nonparty. *See* 42 U.S.C.

the National Childhood Vaccine Injury Act of 1986 (the Act), Pub.L. No. 99–660, 100 Stat. 3758 (codified as amended at 42 U.S.C. §§ 300aa–1 to 300aa–23 (1982 & Supp. IV 1986)). It is before the court on petitioner's objection to the Special Master's report recommending dismissal of petitioner's claim for compensation for injuries her minor son sustained when he was inoculated with the pertussis component of the DPT (Diphtheria, Tetanus, Pertussis) vaccine. The Special Master had acted on a motion to dismiss petitioner's claim, filed by the Secretary of the Department of Health & Human Services (HHS), respondent.

Accepting respondent's interpretation of the statutory requirements for filing for compensation, outlined in the 1987 amended version of the Act, 42 U.S.C.A. §§ 300aa–11(a)(4), (a)(7) and (c)(1)(E) (West Supp.1988), the Special Master concluded that, as a matter of law, petitioner is barred from filing for compensation under the Act in the Claims Court. The Special Master agreed with respondent that the 1987 provisions of the Act precluded petitioner from filing for compensatory damages, notwithstanding the dismissal of her claim against the state of Michigan, because she settled with the doctor who administered the vaccine.

Asserting the statute's "facial ambiguity," petitioner has challenged the Special Master's statutory interpretation. She maintains that the provisions in issue, read differently, make her eligible to seek further damages under the Act for her son's injuries.

The Special Master has jurisdiction under the Vaccine Statute, 42 U.S.C.A. § 300aa–12(c) (West Supp.1988), to act on petitioner's claim under General Order No. 23, Vaccine Rule 18 of the court. The Claims Court's jurisdiction to make a "de novo determination" of this matter on appeal, and to issue a judgment, also is pursuant to the Act. 42 U.S.C.A. § 300aa–12(d), (e) (West Supp.1988).

After consideration of the submissions of the parties, oral argument having been waived by the parties, the court adopts the Special Master's recommendation and dismisses the petitioner's claim.

I

The facts are taken from the petition and supporting affidavits and are not disputed relative to consideration of the matter in issue.

Petitioner Shelly Wiggins, mother of minor Michael Wiggins, seeks benefits for "catastrophic" injuries her son sustained in March 1982, when, at four months old, he was inoculated with the second in a series of three DPT vaccines. The vaccines were manufactured by the State of Michigan's Department of Public Health (MDPH) and were administered by the petitioner's family physician.

Petitioner thereafter filed a common law tort claim in a Michigan state court against both the MDPH and the family physician. Briefs before the court reveal the suit against the MDPH was dismissed because of governmental immunity, a decision that was affirmed by the Michigan Court of Appeals. The Michigan Supreme Court subsequently denied petitioner's request to review the appellate court's decision.

In February 1987, however, petitioner settled her claim with the family physician for $225,000. Petitioner stresses that the settlement figure, which exceeds the physician's liability insurance limit by $25,000, was reached because additional funds to satisfy her claim were unavailable, not because the amount represented "full satisfaction" of her son's claim for damages.

Unable to obtain satisfaction from the MDPH because of the state jurisdictional bar of immunity, petitioner, in January 1989, filed a petition in this court pursuant to the Act, to gain additional compensation

§ 300aa–12 (1987). Accordingly, within fourteen (14) days of the date of filing this decision, the parties shall designate any material subject to § 300aa–12 and such designated material will be deleted for public access. If on review of this decision there are no objections filed within the fourteen (14) day period, then it shall be deemed that there is no material subject to § 300aa–12.

for her son's "future expected medical costs." Respondent filed a motion to dismiss petitioner's claim, which HHS maintains failed to state a claim for which relief could be granted. The Special Master's Report accepted respondent's argument that petitioner's action be dismissed for the following reasons: she violated statutory requirements when she failed to submit a supporting affidavit showing that "the person who suffered the vaccine-related injury" had not collected an award or settlement in a previous civil action; and her receipt of the settlement award makes her ineligible to file for further benefits under the Act.[1]

The provisions in the Act, as amended, Pub.L. 100–203, 101 Stat. 1330–221 to 1330–225 were significant, relative to the question now before the court, because they present guidelines for filing petitions for compensation. They read, in pertinent part:

\* \* \* \* \* \*

(a) General rule

(4) If in a civil action brought against a vaccine *administrator or manufacturer* before the effective date of this subpart damages were denied for a vaccine-related injury or death or if such civil action was dismissed with prejudice, the person who brought such action may file a petition under subsection (b) of this section for such injury or death. 42 U.S.C.A. § 300aa–11(a)(4) (Supp.1988) (emphasis added).

\* \* \* \* \* \*

(7) If in a civil action brought against a vaccine *administrator or manufacturer* for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition under subsection (b) of this section for

such injury or death. § 300aa–11(a)(7) (emphasis added).

A further provision, stipulates, in pertinent part, what each petition filed in accordance with the above requirements must contain, as well as specified limitations on a petitioner's ability to file:

\* \* \* \* \* \*

(c) Petition content

(1) an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died—

(E) has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death.... § 300aa–11(c)(1)(E).

In her brief opposing respondent's Motion to Dismiss, petitioner concludes that the conflict between subsections (a)(4) and (a)(7), along with subsection (c)(1)(E) suggests a "facial ambiguity" in the statute. Consequently, petitioner maintains that the court must construe the language in a manner "harmonious" with the entire statutory scheme to ensure the manifestation of congressional intent.

The Vaccine Act of 1986, provided in pertinent part:

\* \* \* \* \* \*

(a)(4) If in a civil action brought against a vaccine *manufacturer* before the effective date of this subtitle damages were denied for a vaccine-related injury or death or if such civil action was dismissed with prejudice, the person who brought such action may file a petition under subsection (b) of this section for such injury or death (emphasis added).

\* \* \* \* \* \*

(4)(7) If in a civil action brought against a vaccine *manufacturer* for a vaccine-related injury or death damages

---

1. The Special Master noted, however, that the respondent incorrectly framed his objection as a challenge to the Claims Court's jurisdiction. Instead the Special Master characterized respondent's motion as a challenge to petitioner's capacity to sue within the provisions of the Act in issue, inasmuch as she failed to satisfy the Act's

filing requirements. The court agrees with the Special Master's characterization of respondent's motion. *See W.R. Cooper Gen. Contractor v. United States,* 843 F.2d 1362, 1364 (Fed. Cir.1988); *Marvel Eng'g Co. v. United States,* 14 Cl.Ct. 614, 620–21 (1988).

are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition under subsection (b) of this section for such injury or death (emphasis added).

\* \* \* \* \* \*

When the lawsuit against the physician—the administrator of the vaccine—was settled in February 1987, petitioner and her husband, according to an affidavit filed by their attorney, had read the Vaccine Act, which included the above-cited provisions. They believed that Michael Wiggins would qualify for compensation pursuant to the then existing terms of the Vaccine Act, regardless of the settlement reached with the physician. It should be noted, however, that the effective date of the Act, as amended, as far as litigation in this court is concerned, was October 1, 1988.

Under the 1986 Act, subsection (a)(4) provided that a person who was unsuccessful in a civil action against a vaccine manufacturer could file a petition for compensation under the Vaccine Act. Subsection (a)(7) further provided that a person who settled a civil action brought against a vaccine manufacturer was barred from filing a petition for compensation under the Vaccine Act (underscoring supplied). It should be noted that subsection (a)(7) did not expressly prohibit petitioners who settled with administrators from filing petitions for compensation under the Vaccine Act.

Under the 1987 amendments to the Vaccine Act, subsection (a)(4) provided that a person who was unsuccessful in a civil action against a vaccine administrator or manufacturer could file a petition for compensation under the Vaccine Act. Subsection (a)(7) provided that a person who settled a civil action brought against a vaccine administrator or manufacturer was barred from filing a petition for compensation under the Vaccine Act (underscoring supplied).

The issue before the Special Master, which is now before the court, is whether petitioner is barred by the provisions of 42 U.S.C.A. § 300aa–11(a)(7) from filing a petition for compensation under the Vaccine Act because of petitioner's settlement of the prior civil action it brought against the vaccine administrator.

Citing the 1986 Act's legislative history, which predates the amended version containing the clauses in issue, petitioner avers that the federal "no fault" compensation program originally was established so that awards would be "made to vaccine-injured persons quickly, easily, and with certainty and generosity." H.R. REP. No. 908, 99th Cong., 2d. Sess. 6, *reprinted in* 1986 U.S.CODE CONG. & ADMIN.NEWS 6287, 6344. Petitioner states that such language suggests that Congress sought to alleviate future financial burdens faced by children like her son. To accomplish this congressional goal, petitioner adds, the requirements stipulated in the above-cited provisions of section 300aa–11 must be read to allow her son's recovery under the Act.

Petitioner maintains that a more appropriate interpretation of the provisions should allow injured persons who were denied compensation from the manufacturer in a civil action to remain eligible to receive further compensation under the amended Act, notwithstanding a petitioner's recovery from the vaccine administrator. Such an approach would not lead to double recovery, according to the petitioner, because the settlement with the administrator could be used as a set-off against additional compensation received under the Act.

In Petitioner's Objection to the Special Master's Report, petitioner charged that the Special Master, in addition to misconstruing the statute, ignored two other provisions, subsections 300aa–13(a)(1) and 300aa–15(e). The former provision, petitioner contends, would provide for compensation to a petitioner if the court finds the party "sustained or had significantly aggravated any illness, disability, injury or condition set forth in the vaccine injury table in association with the vaccine re-

ferred to in subparagraph (a)....”[2] Petitioner also states that the Special Master failed to recommend an award of attorney's fees in accordance with 300aa–15(e).

Respondent, in its reply to Petitioner's Objection to the Special Master's Report, interprets the subsections in issue differently. Respondent maintains that "the one and only purpose" of subsection 300aa–11(a)(4) was to provide an injured party who had previously been unsuccessful at obtaining "any" positive results to have a "second chance" to obtain benefits under the Program's less stringent "no fault" system.[3] By adding the words "or administrators," respondent notes, Congress did not aim to "vitiate" its singular purpose.

The Special Master's Report maintains that subsections 300aa–11(a)(4) and (a)(7) each contemplates only one civil action for a vaccine-related injury, yet acknowledges two alternative defendants.

The subsections, according to the Special Master, are "reciprocally written" to accomplish the same end—"limit claimants to one remedy per injury before the United States Claims Court." The stipulation in subsection (c)(1)(E), the Special Master contends, supports such a conclusion, because it specifically requires petitioner to allege in an affidavit that there had been no previous recovery in connection with the injury that is the subject of the petition before the Claims Court.

Considering the absence of ambiguity in the language of the Act, the Special Master concluded, a resort to legislative history to determine Congress' intent was unneces-

sary. The Special Master determined, instead, that the Act's express language barred petitioner's recovery.

## II

The parties' briefs in this case present a problem of statutory construction involving key procedural provisions concerning a petitioner's eligibility to file suit under the Act.

Petitioner contends that the "conflict" between subsections 300aa–11(a)(4), (a)(7) and (c)(1)(E) of the Act suggests a facial ambiguity that requires the court to consult the Act's legislative history for language verifying petitioner's rights to additional compensation under the Act.

■ The Special Master, however, rejected petitioner's argument and adopted respondent's position that the language of the subsections renders petitioner ineligible to file her suit in the Claims Court. The subsections, according to the Special Master, are "reciprocally written" to accomplish a similar end—"to limit claimants to one remedy per injury before the United States Claims Court."[4]

Settled law dictates that the court must start with the language of the statute itself when attempting to determine if it comports with congressional intent. *See United States v. John C. Grimberg Co., Inc.,* 702 F.2d 1362, 1365 (Fed.Cir.1983); *Fernandez v. Brock,* 840 F.2d 622, 632 (9th Cir.1987). Adherence to this principle is particularly crucial in a case of first impression, *see Funbus v. Syss., Inc. State of*

---

**2.** Petitioner obviously has misquoted 42 U.S.C.A. § 300aa–13(a)(1), because the language he cites does not appear in this section.

**3.** Respondent's argument seems plausible, particularly when the pre-amended versions of the subsections are considered in conjunction with the current ones at issue in this case. The original statute obviously contemplated only suits against the vaccine's manufacturer. Nonetheless, the availability of common law tort claims resulted in suits also against administrators of the vaccine. Consequently, when Congress amended the clauses in 1987, its purpose in doing so was probably to expressly recognize by statute a class of defendants for which the previous version did not provide. To imply that

Congress intended otherwise would create an additional source of recovery for the injured person, an interpretation that would result in a construction of the statutory provisions in contravention of Congress' original intent. *See Jordan v. Lyng,* 659 F.Supp. 1403, 1413 (E.D.Va. 1987); *Linquist v. Bowen,* 813 F.2d 884, 890 (8th Cir.1987).

**4.** The court agrees with the Special Master's assessment, in so far as the statute's plain language does appear to restrict each claimant to one remedy per injury. Inasmuch as petitioner's prior suit was filed in a Michigan state court, and not the Claims Court, however, the Special Master's reference to the Claims Court in this context is, perhaps, misplaced.

*California Pub. Util. Comm.*, 801 F.2d 1120, 1126 (9th Cir.1986) because in such a case the "most persuasive" evidence of Congress' intent is the wording of the statute itself. *Enserch Int'l Exploration, Inc. v. Attock Oil Co.*, 656 F.Supp. 1162 (N.D. Texas, 1987). And if the language of the statute is sufficiently clear and is not "at odds" with legislative history, the court is obligated to defer to its clear meaning. *Rodriguez v. United States*, 480 U.S. 522, 526, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (quoting *Aaron v. S.E.C.*, 446 U.S. 680, 695, 100 S.Ct. 1945, 1955, 64 L.Ed.2d 611 (1980) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214, n. 33, 96 S.Ct. 1375, 1391 n. 33, 47 L.Ed.2d 668 (1976))); *see Neptune v. United States*, 13 Cl.Ct. 309, 312 (1987); *see also, Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir.1988). Absent a clear showing of contrary legislative intent, the plain meaning analysis of the statutory language in issue begins and ends the judicial inquiry. *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984).

■ Petitioner argues that the language of both subsections 300aa–11(a)(4) and (a)(7) conflicts, thus warranting a resort to the Act's legislative history to determine congressional intent.[5] She contends that her eligibility status is further unclear, because the original version of both subsections referred only to suits against the "manufacturer."

Petitioner, therefore, argues that the amended subsections, read in harmony with the original subsections and the Act's legislative history, indicate she is entitled to relief, even though she was unsuccessful in suing the manufacturer. Petitioner's argument is based on her conclusion that the addition of the amendment's language, "administrator or manufacturer," was evidence of Congress' intent that a petitioner

such as herself should have more than one avenue of relief.

The court admits that the language of subsection (a)(4), if read in isolation, might suggest that petitioner does qualify for filing because of her unsuccessful suit against the State of Michigan. In fact, the court would have been obliged to reach such a conclusion, were it not for the existence of subsections (a)(7) and (c)(1)(E). Subsection (a)(7) expressly precludes petitioner from filing her claim, because of the settlement she received from the administrator of the vaccine. Subsection (c)(1)(E) further reinforces the crucial importance of a petitioner disproving receipt of such an award as a precondition to filing under the Act, by expressly requesting an affidavit swearing to such nonreceipt.

The court's collective interpretation of these subsections is prompted by its duty to harmonize the two provisions that present the apparent conflict by examining other provisions within the entire statute, like subsection (c)(1)(E), for instance, that "literally are a part of the context." *United States v. Vest*, 639 F.Supp. 899, 909 (D.Mass.1986). In the process, however, the court must be careful to avoid an interpretation that renders either provision redundant. *Love v. Thomas*, 858 F.2d 1347, 1354 (9th Cir.1988). Instead, the court must read "at least one and perhaps both, as necessarily subject to some implicit exceptions." *United States v. Vest* at 909. A search for the solution to the issue presented in this case will have failed only if the court is unable to determine what those "implicit exceptions are" from the plain meaning of the text as a whole. *Id.*

Applying these principles of statutory interpretation to our case, the court has determined that, if it were to rule that plaintiff is eligible to file her petition under (a)(4), it would have to conclude that provi-

---

5. Assuming, arguendo, that the court found it necessary to consult legislative history on the issue presented, it would not provide any meaningful assistance. This is so because the legislative history available was attendant to the Act as written before the 1987 amendment's addition of the language "administrator or manufacturer." There is no legislative history available relative to the introduction in the 1987 amendments of the language "administrator or" in subsections 300aa–11(a)(4) and (a)(7). Moreover, there is nothing in the legislative history of the 1986 Vaccine Act, as amended in 1987, that indicates, by inference or otherwise, a conflict or inconsistency with the result reached herein.

sion (a)(7), which specifically bars petitioner's claim, is redundant. Consequently, to harmonize both provisions, so that their application would lead to consistent results, the court must recognize that provision (a)(4) is subject to an "implied exception." Specifically, the court must conclude that a petitioner may be eligible to file a claim for injuries under provision (a)(4) only if she is *not* barred by subsection (a)(7). *See id.; see also, Bechtel Constr. Inc. v. United Bhd. of Carpenters & Joiners of Am.*, 812 F.2d 1220, 1225 (9th Cir.1987) (legislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious). Alternatively, the court must deduce that subsection (a)(7) also is subject to the implied exception that a petitioner is eligible to file only if she qualifies under both (a)(4) and (a)(7).

Viewed in such a manner, the court concludes that these provisions, when read together and in the context of the entire statutory scheme, present clear indication of Congress' intent. Consequently, contrary to petitioner's stance, the court determines that the clarity of the language in the statute precludes a resort to legislative history. *See Rodriguez* 480 U.S. at 526, 107 S.Ct. at 1393.

■ Petitioner's argument also is predicated on the notion that the language "administrator or manufacturer" grants would-be claimants either a choice of remedies or successive remedies against two or more joint tortfeasors, and that her election of one does not preclude her from capitalizing on yet another. Petitioner, therefore, suggests that the court view the use of "or" disjunctively so as to fulfill an illusory legislative objective that she is somehow entitled to sue however many joint tortfeasors as necessary in order to be made whole.

Case law dictates, however, that in fulfilling their duty to ascertain the legislature's clear intention, courts often are "compelled to construe 'or' as meaning 'and'...." *Peacock v. Lubbock*, 252 F.2d 892, 893 (5th Cir.1958). Such a construction especially is warranted where the use of "and" "would express the thought with

greater clarity." *De Sylva v. Ballentine*, 351 U.S. 570, 573, 76 S.Ct. 974, 976, 100 L.Ed. 1415 (1956). Furthermore, "or" is not always disjunctive, but sometimes is "interpretive" or "expository" of a preceding word, often used in sense of "to-wit" or "that is to say." *Bowles v. Weiner*, 6 F.R.D. 540, 542 (E.D.Mich.1947). The result of applying such a rule is that "or" "gives to the word preceding it the same meaning as that which follows." *Id.* at 542.

Applying these rules of interpretation to use of the word "or" in the case at bar, the court concludes that congressional intent is best manifested when "or" is read as "and." *See De Sylva*, 351 at 573, 76 S.Ct. at 976. Moreover, the court would reach the same result by concluding, in accordance with *Bowles*, that the use of "or" in subsections (a)(4) and (a)(7) indicates that "administrator" and "manufacturer" are synonymous. *See Bowles* at 542.

The court is then free to read "administrator or manufacturer" in subsection (a)(4) as "administrator," contrary to petitioner's view. By doing so, petitioner is easily disqualified from filing a petition, since she was not denied damages from the administrator. Moreover, if the court substitutes the word "administrator" for "administrator or manufacturer" in subsection (a)(7), petitioner again becomes ineligible for filing, because she has received a settlement award from the administrator.

Such an approach is consistent with past efforts of courts to avoid making any part of a statute "redundant." *See Love* at 1354; *see also, Beisler v. Comm'r*, 814 F.2d 1304, 1307 (9th Cir.1987) (citing *Co. Petro Mtg Group, Inc. v. Commodity Futures Trading Comm.*, 680 F.2d 566, 569–70 (9th Cir.1982)) (court must avoid interpretation of statute that renders any part of statute superfluous and does not give effect to all words used by Congress); *Nieto v. Ecker*, 845 F.2d 868, 873 (9th Cir.1988) (an interpretation that renders a statute's section superfluous is a result contrary to a fundamental canon of statutory construction).

Such an analysis is consistent with the principle stated in *Rodriguez* and supports the court's above-stated conclusion that the language of the statute is sufficiently clear on its face and is not inconsistent with legislative history, relied on by plaintiff, in H.R. REP. No. 908 at 6344, mandating an objective to make awards to "vaccine-injured persons quickly, easily, and with certainty and generosity."

Petitioner argues that she should be allowed to sue, notwithstanding her recovery from the physician, because the amendment suggests this is Congress' more recent intent.

Settled law in the area of statutory construction of revised codes, however, indicates that, absent substantive comment, "it is generally held that a change in statutory language during codification is not intended to alter the statute's scope." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 318, 105 S.Ct. 3180, 3187, 87 L.Ed.2d 220 (1985) (citing *Muniz v. Hoffman*, 422 U.S. 454, 467–74, 95 S.Ct. 2178, 2186–89, 45 L.Ed.2d 319 (1975)); *see also Busbee v. Smith*, 549 F.Supp. 494 (D.C. D.C.1982), *aff'd* 459 U.S. 1166, 103 S.Ct. 809, 74 L.Ed.2d 1010 (1983) (revised statutes should not lightly be read as making a change, especially where the revisers placed no marginal comments suggesting an amendment next to section). Accordingly, the court declines to acknowledge the legislature intended to change the scope of the 1986 Act, so as to allow petitioner multiple recoveries, when it changed the pertinent language from "manufacturer" to "administrator or manufacturer." *See Walters*, 473 U.S. at 318, 105 S.Ct. at 3188.

### III

On the surface, the result reached herein—denying petitioner an opportunity to seek damages beyond the $225,000 already received—may seem harsh and dispassionate. However, the court declines to misread the statute in order to reach a sympathetic result. If the court has misread the language at issue, higher authority is available to overrule such a reading, and, if necessary, Congress is ultimately free to change the language. *See Mansell v. Mansell*, 490 U.S. ——, 109 S.Ct. 2023, 2031, 104 L.Ed.2d 675 (May 1989).

The recommendation of the Special Master is, therefore, adopted and petitioner's claim is dismissed. The clerk is directed to enter judgment dismissing the petition. No costs.