Barbara and Warren **AMENDOLA**, as Parents and Guardians of Christopher Amendola, Petitioners,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–766V.

United States Claims Court.

July 16, 1991.

Frank Mitchell Corso, Westbury, N.Y., for petitioners.

Carol B. Essrick, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

## OPINION

NETTESHEIM, Judge.

This case is before the court on petitioners' motion for review of a special master's dismissal of their petition for compensation brought under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1—300aa–34 (1988), *as amended* by several public laws codified in 42 U.S.C.A. §§ 300aa–1—300aa–34 (West Supp.1991) ("the Act"). The issue for decision is whether petitioners' action is barred for failure to dismiss a state court malpractice suit that was pending at the time the Act became effective and that proceeded to judgment against petitioners before they filed their petition under the Act. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed. On June 24, 1978, Christopher Amendola received a DPT (Diphtheria, Pertussis, Tetanus) vaccination that allegedly resulted in his present injuries.[1] On July 12, 1985,

---

1. Petitioners described their son's condition in their affidavit dated August 7, 1990. The special master did not address the source of that condition.

Barbara and Warren Amendola ("petitioners"), on behalf of their minor son Christopher, initiated a civil malpractice suit in the Supreme Court for the State of New York against the physician who inoculated Christopher. That court rendered a decision against petitioners in spring 1989.[2] On August 14, 1990, petitioners filed a claim for compensation under the Act. Concluding that adjudication of the prior action barred compensation under section 300aa–11(a)(5)(A) of the Act, which precludes the filing of a petition if a civil action for damages pending on the Act's effective date has gone to judgment, Special Master Paul T. Baird entered an order dismissing the action. *Amendola v. Secretary of HHS*, No. 90–766V, 1991 WL 43027 (Cl.Ct. Spec. Master Mar. 14, 1991).

## DISCUSSION

### 1. *Standard of review*

■ On review of a decision by a special master, the Claims Court is authorized to "set aside any findings of fact or conclusion[s] of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C.A. § 300aa–12(e)(2)(B).

The Supreme Court, in the context of reviewing a federal agency's decision under the Administrative Procedure Act, 5 U.S.C. § 706 (1988), explained that under the arbitrary and capricious standard a reviewing court must consider "whether the [federal agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971) (citing cases). "Although ... [the] inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." *Id.*

The Federal Circuit, in the context of reviewing a district court's decision to quash a deposition subpoena, set out the following guidelines:

An abuse of discretion occurs when (1) the court's decision is "clearly unreasonable, arbitrary or fanciful" (*Northrop Corp. [v. McDonnell Douglas Corp.]*, 751 F.2d [395] at 399 [(D.C.Cir.1984)]; (2) the decision is based on an erroneous conclusion of law (*Ariel [v. Jones]*, 693 F.2d [1058] at 1060 [(11th Cir.1982)], citing *Premium Service Corp. [v. Sperry & Hutchinson Co.]*, 511 F.2d [225] at 229 [(9th Cir.1975)]); (3) the court's findings are clearly erroneous (*Deitchman [v. E.R. Squibb & Sons, Inc.]*, 740 F.2d [556] at 564 [(7th Cir.1984)]); or (4) the record contains no evidence on which the district court rationally could have based its decision (*e.g., Ariel*, 693 F.2d at 1060). However, "[t]he phrase [abuse of discretion] means ... that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir.1984); *Dart Industries, Co. [v. Westwood Chemical Co.]*, 649 F.2d [646] at 648 [(9th Cir.1980)], citing *Premium Services Corp.*, 511 F.2d at 229.... "Such abuses ... [of discretion] must be unusual and exceptional; we will not substitute our judgment for that of the trial judge." 511 F.2d at 229 (citation omitted).

*Heat & Control Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed.Cir.1986); *see also Hyundai Elecs. Indus. Co. v. ITC*, 899 F.2d 1204, 1209 (Fed.Cir.1990) (explaining that the "touchstone" of arbitrary, capricious, and abuse of discretion standards of review is rationality—consideration of all relevant factors absent a clear error of judgment).

### 2. *Review of special master's legal conclusions*

■ As the facts of the case are undisputed, the court only reviews, first, the special master's legal conclusion that petitioners are precluded from filing a petition under sections 300aa–11(a)(4) and (a)(5)(A) of the Act, which describe the status of

---

**2.** The record does not reveal the exact date of

the judgment.

other court actions on the same claim that will prevent a petitioner from filing a claim under the Act. Second, the court reviews the special master's legal conclusion that a pending malpractice action is included as a civil action for damages for a vaccine-related injury under section 300aa–11(a)(5)(A). Sections 300aa–11(a)(4), (a)(5)(A), and (a)(5)(B) provide, as follows:

(4) If in a civil action brought against a vaccine administrator or manufacturer before the effective date of this subpart damages were denied for a vaccine-related injury or death or if such civil action was dismissed with prejudice, the person who brought such action may file a petition under subsection (b) of this section for such injury or death. [Subsection (b) authorizes the filing of petitions for compensation under the Act.]

(5)(A) A plaintiff who on the effective date of this subpart has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after the effective date of this subpart or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition under subsection (b) of this section for such injury or death.

(B) If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death.

Statutory construction begins with the language of the statute, *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1579 (Fed.Cir.1990), *cert. denied*, ─── U.S. ───, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991) (citing *Mallard v. U.S. District Court for Southern Dist. of Iowa*, 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)), with the assumption that the language's ordinary connotation accurately reflects congressional intent. *Park 'N Fly, Inc. v.*

*Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661–62, 83 L.Ed.2d 582 (1985); *Neptune Mut. Ass'n of Bermuda v. United States*, 13 Cl.Ct. 309, 312 (1987), *aff'd in part and vacated in part on other grounds*, 862 F.2d 1546 (Fed.Cir.1988). Where a statute's language is unambiguous, its plain meaning is conclusive and judicial inquiry halts at that point, *Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540, 542 (Fed.Cir.1988) (citing cases), or, put another way, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. G.T.E. Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). If a literal reading of the statute would " 'compel an odd result,' " a court must determine legislative intent from other evidence, such as the circumstances surrounding enactment. *Public Citizen v. Department of Justice*, 491 U.S. 440, 454, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989) (quoting *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989)).[3]

The rules of statutory construction also require that "statutes should be read to avoid rendering superfluous any parts thereof...." *Astoria Fed. Sav. and Loan Ass'n v. Solimino*, ─── U.S. ───, 111 S.Ct. 2166, 2168, 115 L.Ed.2d 96 (1991); *Horner v. Merit Systems Protection Bd.*, 815 F.2d 668, 674 (Fed.Cir.1987) ("[S]tatute should not be interpreted so as to render one part inoperative....") (citing *Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)). "[A] section of a statute should not be read in isolation from the context of the whole Act...." *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962) (footnote omitted).

The special master interpreted section 300aa–11(a)(5)(A), as follows: "[I]f the civil

---

**3.** "Looking beyond the naked text for guidance when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it ex-

ists.' " *Public Citizen*, 491 U.S. at 455, 109 S.Ct. at 2567 (quoting *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48, 49 S.Ct. 52, 53–54, 73 L.Ed. 170 (1928) (Holmes, J.)); *Neptune Mut.*, 13 Cl.Ct. at 312–13 (citing *Reid v. Department of Commerce*, 793 F.2d 277, 281–82 (Fed.Cir.1986)).

action goes to judgment or is still pending two years after the effective date, then the claimant is precluded from ever filing under the Program, regardless of the outcome of the civil action." *Amendola,* slip op. at 4.

Petitioners assert that neither sections 300aa–11(a)(4) nor (a)(5) bar their present action and that the meaning of these provisions is understood more readily when viewed together. First, petitioners argue that under 300aa–11(a)(4), if an action is commenced prior to the effective date of the Act and if damages are subsequently denied at any time, then a claimant is eligible to apply for compensation under the Act and is not barred by section 300aa–11(a)(5)(A). Second, petitioners construe section (a)(5)(A) as giving a claimant the option of withdrawing from a prior-filed action without prejudice so that a claim for compensation may be made under the Act. Finally, according to petitioners, section 300aa–11(a)(5)(B) simply prohibits a claimant from filing under the Act while a prior action is pending. Petitioners conclude that they meet these criteria and that these statutory provisions do not preclude them from filing their petition under the Act. Respondent rejoins that section 300aa–11(a)(4) does not apply to pending actions and to interpret sections 300aa–11(a)(4) and (a)(5) as petitioners suggest would render those sections superfluous.

Petitioners' interpretation of sections 300aa–11(a)(4), (a)(5)(A), and (a)(5)(B) does not comport with their plain meaning. These statutory provisions should be read in conjunction with each other. *See Wiggins v. Secretary of HHS,* 17 Cl.Ct. 551, 556 (1989) (two sections of the Act might

be interpreted differently if read in isolation), *aff'd,* 898 F.2d 1572 (1990).

Section 300aa–11(a)(4) allows a claimant to file a petition for compensation under the Act if the civil action was brought "before the effective date of this subpart" and if "damages were denied for a vaccine-related injury or death or if such civil action was dismissed with prejudice...." Although it is difficult to state this proposition more concisely, section 300aa–11(a)(4) addresses those situations wherein a prior action for damages resulting from a vaccine-related injury or death had been adjudicated against a claimant or dismissed before the Act became an available remedy.

In contrast, both sections 300aa–11(a)(5)(A) and (a)(5)(B) address situations arising after the Act became effective wherein a claimant "has pending a civil action for damages for a vaccine-related injury or death." If such an action is pending, section 300aa–11(a)(5)(A) attaches conditions to proceeding under the Act. The provision stipulates that a claimant "may,[4] at any time within 2 years after the effective date of this subpart or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs...." The meaning of the language is clear: If a claimant elects to pursue a claim under the Act, the claimant must dismiss any pending action. Section 300aa–11(a)(5)(B) adds nothing to this requirement other than to restate that a "person may not file a petition ..." if that person already "has pending a civil action for damages for a vaccine-related injury or death."

Reading sections 300aa–11(a)(4) and (a)(5) together shows that Congress addressed two different situations.[5] Petitioners' ac-

---

**4.** The special master construed the term "may" to mean the following:

"They [petitioners] 'may' dismiss their civil actions and file under the Program or they 'may' continue with their civil actions and be barred from filing under the Program. The choice is theirs...." *Amendola,* slip op. at 4.

**5.** Petitioners argue that the Act does not demand a choice of forum and that proceeding in both the civil courts and the Claims Court is consistent with the Act. The Act's legislative history reveals that Congress intended the use of

more than one forum, but only after exhaustion of the remedies provided by the Act. The House of Representatives Committee on Energy and Commerce reported:

[T]he bill requires that a person with an injury resulting from a vaccine that was administered after the enactment of this legislation file a compensation petition and go through the compensation program before proceeding with any litigation against a manufacturer. If, however, after compensation proceedings are complete, a vaccine-injured person elects

tion qualifies as a "pending" action and falls under section 300aa–11(a)(5). On July 12, 1985, petitioners initiated a civil suit in the Supreme Court for the State of New York for vaccine-related injuries to their son. The effective date for the applicable subpart of the Act is October 1, 1988. 42 U.S.C.A. § 300aa–1 note. Both parties agree that the New York Supreme Court rendered its decision in spring 1989. *See supra* note 2. Thus, petitioners' state court action was pending on the effective date of the subpart, but petitioners did not dismiss that action before a judgment was rendered.[6] Section 300aa–11(a)(5) therefore bars petitioners' action under the Act. The special master's construction is correct as a matter of statutory interpretation.

 A second issue arises as to whether a malpractice action comes within the term "civil action for damages" in section 300aa–11(a)(5)(A). Specifically, petitioners argue that the Act's legislative history demonstrates that the legislation was intended to protect manufacturers from the unavoidable side effects of an " 'unavoidable unsafe' " product. H.R.Rep. No. 908, 99th Cong., 2d Sess. 26, *reprinted in* 1986 U.S.Code Cong. & Admin. News 6344, 6367 [hereinafter "House Report"]. By protecting manufacturers from lawsuits, contend petitioners, the manufacturers would have the ability to remain in business, as well as to continue production of the needed supplies of vaccines. *Id.* at 6, 1986 U.S.Code Cong. & Admin. News at 6347. According to petitioners, the terms "administrator" and "manufacturer," which appear together in the Act, pertain only to those who sell the vaccine, rather than to those who actually administer it. "[T]he legislature in-

tended to add 'administrator' in his or her capacity as *seller* and not as a grossly negligent administrator of a vaccine that was contraindicated." Pets' Br. filed Apr. 12, 1991, at 5 (emphasis in original).

The special master reasoned that "[b]y its own language, § [300aa–]11(a)(5)(A) applies to 'civil action[s] for damages for a vaccine-related injury or death....' " *Amendola*, slip op. at 5. Section 300aa–33(5), the Act's definition section, defines a vaccine-related injury or death as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table." Consequently, the special master rejected petitioners' argument that a prior malpractice claim was distinct from any other claims, reasoning that "[t]he injuries the plaintiffs sought to be compensated for in the prior civil action are the same injuries they seek compensation for here...." *Amendola*, slip op. at 5.

The Act's legislative history does lend petitioners support. Numerous sources refer only to objectives related to manufacturers. When the original bill was under consideration by the House of Representatives, the Committee on Energy and Commerce reported on the problems that vaccine manufacturers confronted in obtaining insurance and concluded that "[t]he loss of any of the existing manufacturers of childhood vaccines at this time could create a genuine public health hazard in this country...." House Report at 6–7, 1986 U.S.Code Cong. & Admin. News at 6348. The report then defined two motivating factors behind initiation of the legislation: "(a) the inadequacy—from both the perspective of vaccine-injured persons as well

---

to reject the system's findings and award and go on to court, he or she is free to do so. House Comm. on Energy and Commerce, National Childhood Vaccine Injury Act of 1986, H.R.Rep. No. 908, 99th Cong., 2d Sess. 12, *reprinted in* 1986 U.S.Code Cong. & Admin. News 6287, 6344, 6353 [hereinafter "House Report"].

**6.** Petitioners argue that dismissal of their prior action and re-application under the Act "would [have] pose[d] severe burdens to petitioners as well as to the Court." Pets' Br. filed Apr. 12, 1991, at 6. However, the Act establishes the precise scenario that petitioners describe. Con-

gress was more concerned, however, with the burden of prosecuting litigation outside the program and focused on the ultimate advantages such a program would offer:

The Committee anticipates that the speed of the compensation program, the low transaction costs of the system, the no-fault nature of the required findings, and the relative certainty and generosity of the systems's awards will divert a significant number of potential plaintiffs from litigation.

House Report at 13, 1986 U.S.Code Cong. & Admin. News at 6354.

as vaccine manufacturers—of the current approach to compensating those who have been damaged by a vaccine; and (b) the instability and unpredictability of the childhood vaccine market." *Id.* at 7, 1986 U.S.Code Cong. & Admin. News at 6348. In addition, the committee stated that "the system is intended to lessen the number of lawsuits against manufacturers...." *Id.* at 12, 1986 U.S.Code Cong. & Admin. News at 6353.

The Senate Committee on Labor and Human Resources acknowledged similar objectives in its report. The committee noted that the focus of the bill was to "help safeguard the vaccine supply, improve our knowledge about adverse reactions and assist in the development of safer vaccines." Senate Comm. on Labor and Human Resources, National Childhood Vaccine Improvement Act of 1986, S.Rep. No. 483, 99th Cong., 2d Sess. at 5 (1986) [hereinafter "Senate Report"]. These objectives are achieved through protection of manufacturers, not vaccine "administrators." The legislative history does not identify "administrators" as among the problems that were sought to be addressed.[7] *See* House Report at 4, 1986 U.S.Code Cong. & Admin. News at 6345 (explaining that the need for legislation stemmed from problems with manufacturers); Senate Report at 5 (focusing on remedies to problems only with manufacturers); 132 Cong.Rec. 33116 (Daily ed. Oct. 17, 1986) (statement of Rep. Waxman) (noting that the bill would limit a child's ability "to sue the manufacturer of the vaccine."); Blum, *Plaintiffs Refile Suits on Vaccine,* Nat'l. L.J. 3, 22 (Oct. 1, 1990) (noting that "the act was a recognition by Congress of public health concerns that vaccine rates were down and manufacturers had left the business as a result of litigation...."); Hagan, *Vaccine Compensation Schemes,* 45 Food Drug Cosm.L.J.

477, 479 (1990) (indicating the significance of "[t]he increasing liability exposure of childhood vaccine manufacturers"); Lenchek, *A Shot in the Arm,* Washington Lawyer 24, 25 (Mar/Apr 1989) (maintaining the premise that the Act was passed in order to compensate for the fledgling vaccine market.); Prins–Stairs, *The National Childhood Vaccine Injury Act of 1986,* 10 J. of Legal Med. 703, 711–18 (1989) (debating whether only manufacturers should or should not be liable under the Act). *But see* 132 Cong.Rec. 30417 (Daily ed. Oct. 10, 1986) (statement of Rep. Walgreen) (noting that "private pediatricians who administer the shots are not prepared to take care of lifetime injury.").

Recently, the Federal Circuit reaffirmed the principle that a petitioner in a Vaccine Act case must put forth clear legislative history in order to support a construction of the Vaccine Act that is contrary to its plain meaning. *Massing v. Secretary of HHS,* 926 F.2d 1133, 1135 (Fed.Cir.1991). Although the legislative history supports petitioners' argument that Congress sought to relieve vaccine manufacturers from defending against civil suits, the history of the Act reveals no congressional intention not to force an election when a pending suit named only the vaccine administrator. Section 300aa–11(a)(5)(A) of the Act refers to "a civil action for damages for a vaccine-related injury or death." Congress does not distinguish a claim against a vaccine manufacturer from other types of claims. Because the legislative history does not acknowledge that prior malpractice actions are not to be included with those against manufacturers for purposes of section 300aa–11(a)(5)(A),[8] this court can not deviate from the plain meaning of the Act. The court is sympathetic with Christopher and his parents, but Congress, in its many iterations of the Act, did

---

7. It should be noted that the term "administrator" was added to the text of the National Vaccine Injury Compensation Program in a 1987 amendment. Vaccine Compensation Amendments of 1987, Pub.L. 100–203, § 4306, 101 Stat. 1330–1, 1330–224. The Act as originally enacted referred only to "manufacturers," and the legislative history does not indicate the reason behind the amendment.

8. Indeed, the Act mentions both types of actions in section 300aa–11(a)(4). Were petitioners' reading to obtain, section 300aa–11(a)(4), (a)(5)(A), and (a)(5)(B) would not cover the same types of civil actions, a result for which Congress supplied no rationalization.

not carry forward into legislation any intention to distinguish prior malpractice claims from other prior civil actions.

The special master's rejection of petitioners' contention that a malpractice action is distinct from other civil actions is consistent with the plain meaning of the Act.[9]

## CONCLUSION

Accordingly, based on the foregoing, the decision of the special master is sustained and the Clerk of the Court shall enter judgment accordingly.

No costs on review.

---

**9.** Petitioners fault respondent for not filing a medical report, as required by RUSCC Appendix J, Vaccine Rule 4(b), prior to moving to dismiss the petition. A motion to dismiss can be filed before an answer, in which case the answer is due only if the motion is denied. *See* RUSCC 12(a). Under the Vaccine Rules the Rule 4(b) report is filed in lieu of an answer. Respondent therefore was not obligated to supply the Rule 4 report unless the special master ordered it provisionally before ruling on respondent's motion.