**Charles SCHINDLER, as natural parent and co-conservator of Karl Michael Schindler, a minor child, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–3315V.**

United States Court of Federal Claims.

March 19, 1993.

---

Lawrence S. Katkowsky, Southfield, MI, for petitioner.

Richard A. Schollmann, Torts Branch, Civ. Div., with whom was Asst. Atty. Gen., Stuart M. Gerson, Helen M. Goldberg, Director, and Charles R. Gross, Asst. Director, Washington, DC, for respondent.

## OPINION

ROBINSON, Judge.

On October 1, 1990, petitioner filed a request for compensation under the National Childhood Vaccine Injury Act, (the "Vaccine Act" or the "Act") 42 U.S.C. §§ 300aa–1 to –34 (1988), *amended by* several public laws (codified as amended at 42 U.S.C.A. §§ 300aa–1 to –34 (West Supp.1992)),[1] on behalf of his son, Karl Michael Schindler. Chief Special Master Gary J. Golkiewicz concluded, on September 23, 1992, that petitioner was not entitled to compensation under the Act. *Schindler v. Secretary of HHS*, No. 90–3315V, 1992 WL 279250 (Cl. Ct.Spec.Mstr. September 23, 1992). This matter is now before the court on petitioner's request for review of the Chief Special Master's decision. Petitioner objects to the decision on three grounds:

1. The Chief Special Master incorrectly held that petitioner's pre-litigation settlement with his son's pediatrician was a "civil action," and, thus, petitioner failed to demonstrate, under § 11(c)(1)(E) of the Act, that he had not previously collected an award or settlement of a civil action for damages for a vaccine-related injury;

2. The Chief Special Master violated precedent in resorting to the legislative history of the Vaccine Act in order to determine the definition of a "civil action" when the language of the statute is unambiguous; and

3. The Chief Special Master's decision discriminated against petitioner's minor child on the basis of age, since the State of Michigan requires settlements involving minors to be approved by a probate court at a conservatorship proceeding.

For the following reasons, the court affirms the Chief Special Master's decision.

### Background

On or about February 8, 1976, Karl Michael Schindler developed paralytic poliomyelitis, Type 2, which was caused with reasonable certainty by the ingestion of oral polio vaccine. In August 1977, petitioner filed an action in the Circuit Court for the County of Wayne, which was later removed by petition to the United States District Court for the Eastern District of Michigan, Civil Action No. 77–71850 (filed June 24, 1977), against Lederle Laboratories (Lederle), the manufacturer of the vaccine, and the American Academy of Pediatrics (the Academy), which compiles the "Red Book," a reference book for physicians containing, among other information, warnings concerning the administration of oral polio vaccines. *Schindler v. Lederle Lab.*, 725 F.2d 1036 (6th Cir.1983) [hereinafter *Lederle*]. Petitioner alleged that if the defendants had adequately warned Karl's pediatrician Dr. Robert Lugg of the danger associated with giving the oral polio vaccine to persons suffering from agammaglobulinemia,[2] Dr. Lugg would not have given the vaccine to Karl. *Id.* at 1037. The trial court concluded that the warnings contained in Lederle's drug package inserts, as

---

1. Individual *sections of the Act will be cited herein without reference to 42 U.S.C.A. § 300aa.*

2. Agammaglobulinemia is an immune deficient state in which the patient has no or a very low level of gamma globulins. A person afflicted with this deficiency, which may be congenital or acquired, is extremely susceptible to infections and unable to resist all types of infectious agents. *Lederle,* 725 F.2d at 1037.

well as those in the Academy's 1974 Red Book were adequate to put a reasonably competent pediatrician on notice regarding the danger associated with giving oral polio vaccine to a child suffering from an immunodeficiency. *Id.* at 1039–40.

During the trial Dr. Lugg stated that he was aware that Karl was at risk for agammaglobulinemia because Karl's younger brother Jeffrey had died from the disorder. *Id.* at 1038. Due to Mrs. Schindler's consultations with Dr. Lugg concerning whether she should have more children, Dr. Lugg acquired a substantial file concerning Jeffrey's death. *Id.* This file contained a case summary and an autopsy report indicating that Jeffrey died from a congenital absence of immunoglobulins, as well as a letter indicating that the disorder may have been hereditary. *Id.* Dr. Lugg admitted that he had not read all of the file concerning the hereditary nature of the disorder until after Karl developed polio. *Id.* Dr. Lugg also admitted that he relied on obsolete product information, and that he failed to consult current product warnings from Lederle or the Academy concerning the administration of the oral polio vaccine to a child suffering from an immunodeficiency. *Id.* at 1039. As a result, the trial court concluded that neither defendant was negligent and entered directed verdicts in favor of both Lederle and the Academy. *Id.* On August 22, 1983, the United States Court of Appeals for the Sixth Circuit affirmed the judgment of the district court. *Id.* at 1040.

Following the dismissal of *Lederle*, petitioner, recognizing that he had a cause of action against Dr. Lugg for medical malpractice, began negotiations with Dr. Lugg and his insurance company. On February 5, 1982, the Probate Court for the County of St. Clair, Michigan, filed an "Order for Settlement of Claim." In his opinion, Chief Special Master Golkiewicz outlined the settlement proceedings in the probate court:

> There was a formal proceeding in a court of justice where the parties appeared with counsel, pleadings were filed, and testimony was taken in open court. The court was empowered to make a "full, final and complete settlement of this claim which will be binding on [the injured child] now and after he has attained his majority." The judge then "Ordered and Adjudged" that Dr. Lugg, through his insurance company, pay $185,000 for the vaccine-related injuries. Furthermore, Dr. Lugg was released and discharged from any future claims or lawsuits arising out of his treatment of the injured child.

*Schindler,* slip op. at 3 (citations omitted).

On October 1, 1990, petitioner filed a claim for compensation under the Vaccine Act, alleging that his son contracted poliomyelitis from the oral polio vaccine administered by Dr. Lugg in 1975. Petitioner alleged that he had not previously collected an award or settlement of a civil action for damages resulting from a vaccine-related injury, as required by § 11(c)(1)(E). On March 20, 1992, respondent filed a motion to dismiss the petition on the ground that petitioner already collected a settlement for the vaccine-related injuries in the 1982 Michigan probate proceeding. Chief Special Master Golkiewicz granted respondent's motion to dismiss, holding that the "negotiated, structured, court ordered and approved settlement with Dr. Lugg was a binding, final, and complete remedy for a cause of action against Dr. Lugg for the child's vaccine-related injuries." *Schindler,* slip op. at 4. On October 21, 1992, petitioner moved this court to review the Chief Special Master's decision.

### Contentions of the Parties

Petitioner contends that the broad definition given to "civil action" by the Chief Special Master is "manifestly and obviously incorrect and a misapplication of law."[3] Petitioner also asserts that the Chief Special Master violated established case law in resorting to the legislative history of the Vaccine Act to establish the definition of a

---

**3.** Petitioner's memorandum of objections to decision of special master, filed October 21, 1992, at 2.

"civil action," since the statutory language is "relatively clear."[4] Finally, petitioner contends that the Chief Special Master's Opinion discriminates against petitioner's minor son on the basis of age; that is, petitioner claims, if Karl had been an adult and the settlement had been concluded privately, a recovery would be allowed under the Act.

Respondent counters that the Chief Special Master correctly defined "civil action," as used in the Vaccine Act, to encompass the proceeding before the Michigan probate court. Furthermore, respondent argues that the Chief Special Master was entitled to refer to the legislative history of the Act to determine whether the prior settlement with Dr. Lugg was a settlement of a "civil action" for damages under §§ 11(a)(7)[5] and 11(c)(1)(E).[6]

### DISCUSSION

■ The Vaccine Act grants the Court of Federal Claims jurisdiction to review the decision of a special master. Recent amendments to the Act have limited the court's reviewing authority by "preclud[ing] de novo review in the [Court of Federal Claims] of a decision of a special master." *Hale v. Secretary of HHS*, 22 Cl.Ct. 403, 405 (1991).

Under the Amended Act, the court may either uphold, remand, or set aside the findings of fact or conclusions of law of a special master. § 12(e)(2). However, the court may upset such findings and conclusions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[. The court may then] issue its own findings of facts and conclusions of law." § 12(e)(2)(B).

In *Hines ex rel. Sevier v. Secretary of HHS*, 940 F.2d 1518 (Fed.Cir.1991), the United States Court of Appeals for the Federal Circuit discussed the arbitrary and capricious standard at length, but declined to adopt an exact formulation of the standard for vaccine cases. *Id.* at 1528. It remarked, however, that, regardless of the precise definition, " 'arbitrary and capricious' is a highly deferential standard of review." *Id.* The court explained that "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Id.* After carefully considering the parties' contentions and Chief Special Master Golkiewicz's decision, this court cannot say that the prior decision was arbitrary or capricious; indeed, this court finds the Chief Special Master's decision well-grounded in the law.

A. *The Chief Special Master correctly resorted to and interpreted the legislative history of the Vaccine Act in broadly defining "Civil Action."*

■ Petitioner first contends that Chief Special Master Golkiewicz erred when he declined to adopt petitioner's narrow definition of "civil action," for purposes of the Vaccine Act, which does not define this phrase. Petitioner maintains that "civil action" should be defined as an "action wherein an issue is presented for trial formed by averments of complaint and denials of answer or replication to new matter...." Black's Law Dictionary (4th ed.). The Chief Special Master rejected this view in favor of a more comprehensive definition; he stated that a "civil action" includes

---

4. Petitioner's memorandum of objections to decision of special master, filed October 21, 1992, at 5.

5. § 11(a)(7) provides:

If in a civil action brought against a vaccine administrator or manufacturer for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition [for compensation under the Program] for such injury or death.

6. § 11(c)(1)(E) provides:

A petition for compensation under the Program for a vaccine-related injury or death shall contain—

(1) ... an affidavit and supporting documentation, demonstrating that the person who suffered such injury or who died—

(E) has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death.

"any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice, which the law affords him." *Schindler*, slip op. at 3 (quoting *Weston v. City Council of Charleston*, 27 U.S. (2 Pet.) 449, 464, 7 L.Ed. 481 (1829), *overruled on other grounds by North Dakota v. United States*, 495 U.S. 423, 434–35, 110 S.Ct. 1986, 1994–95, 109 L.Ed.2d 420 (1990)); *see Stoll v. Hawkeye Casualty Co.*, 185 F.2d 96, 98 (8th Cir.1950).

Petitioner urges that the definition of a "civil action" is significantly narrower than that adopted by the Chief Special Master. He points out that the Federal Rules of Civil Procedure and the Michigan Rules of Civil Procedure provide that "[a] civil action is commenced by filing a complaint in court." Fed.R.Civ.Proc. 3; MCR 2.101(B). Petitioner adds that the Chief Special Master violated established case law by resorting to the legislative history of the Vaccine Act in order to determine the meaning of "civil action." Chief Special Master Golkiewicz recognized, however, that the Federal Rules of Civil Procedure and the Michigan Rules of Civil Procedure are merely procedural rules which do not constitute an exhaustive description of a "civil action." *Schindler*, slip op. at 3. Chief Special Master Golkiewicz chose to define civil action broadly, in light of the legislative history of the Vaccine Act, to include petitioner's conservatorship proceeding before the Michigan Probate Court. *Schindler*, slip op. at 6; *see Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989) (holding that for purposes of awards of attorney's fees, pursuant to the Equal Access to Justice Act (EAJA), "civil action" includes administrative proceedings necessary to the completion of a civil action); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); *Webb v. County Bd. of Educ.*, 471

U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985).

The court will defer to the clear meaning of a statute when the language is sufficiently clear and the plain meaning of the statute is supported by the legislative history. *Rodriguez v. United States*, 480 U.S. 522, 526, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987); *Greider v. Secretary of HHS*, 23 Cl.Ct. 348, 350 (1991); *Wiggins v. Secretary of HHS*, 17 Cl.Ct. 551, 556 (1989), *aff'd*, 898 F.2d 1572 (Fed.Cir.1990); *see Amendola v. Secretary of HHS*, 23 Cl.Ct. 621, 624 (1991). The Chief Special Master correctly observed, however, that "in interpreting a statute, the court will not look merely to a particular clause in which general words may be used but will take in connection with it the whole statute ... and the objects and policy of the law...." *Schindler*, slip op. at 4 (quoting *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1857)); *see Stafford v. Briggs*, 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980). Indeed, the plain meaning of a statute does not preclude an analysis of legislative history. *See Ocean Drilling & Exploration Co. v. United States*, 220 Ct.Cl. 395, 600 F.2d 1343 (1979).

One of the purposes of the Vaccine Act is to provide an alternative forum for children with vaccine-related injuries. *Schindler*, slip op. at 5. The injured person may, therefore, elect to proceed either under the Vaccine Act *or* pursue traditional tort remedies. *Id.* at 4. This election effectuates an important purpose of the Act, to prevent double recoveries and windfalls. *Id.* at 6. In essence, petitioner is attempting to collect twice for Karl's vaccine-related injuries, in contravention of the Vaccine Act.[7]

This court finds that the Chief Special Master was neither arbitrary nor capricious in considering legislative history to resolve this matter. This court further finds that the Chief Special Master's analysis of the legislative history was thorough, and that

---

7. Although the Act provides for a right of subrogation under § 17(a), if compensation were awarded to petitioner in this instance, the Government's right of subrogation would be extinguished because petitioner's settlement forever released and discharged Dr. Lugg for Karl's injuries.

**20**

his decision prevented petitioner from recovering twice for the same injury and, thus, circumventing one clear purpose of the Act.

B. *The Chief Special Master's decision does not discriminate against Karl Schindler because of his age.*

 Finally, petitioner contends that Chief Special Master Golkiewicz's decision discriminated against his son, Karl, on the basis of age. Petitioner asserts that if his son had been an adult, and the settlement had been concluded privately, a recovery would have been allowed under the Vaccine Act. Petitioner's complaint amounts to a constitutional challenge of the Act.[8] It is not the Vaccine Act, however, which mandates that a settlement with a minor be approved by a probate court within the framework of a conservatorship proceeding. Rather, the State of Michigan requires that a probate estate be established and the settlement be approved by a judge in a state judicial proceeding. Although children are certainly not beyond the protection of the Constitution, because of their minority, states possess the paternalistic power to protect and promote their welfare. *Moe v. Dinkins*, 533 F.Supp. 623, 628 (S.D.N.Y.1981), *aff'd*, 669 F.2d 67 (2d Cir.), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982).

Petitioner identifies an unfortunate effect of the Act as it is currently drafted. This is not to say, however, that the Act in and of itself, or as applied to this case by the Chief Special Master, is somehow less than lawful. Precluding recovery under the Act to a petitioner who previously recovered for vaccine-related injuries, as the result of a *settlement*, as opposed to receiving a judgment or settlement as a result of a *civil action* may be an appropriate alternative, but one requiring legislative action by the United States Congress. In any event, this court cannot find support for petitioner's contention in the Act. Ac-

cordingly, the court finds that contention to be without merit.

This court affirms the Chief Special Master's decision denying compensation under the Act. No costs.

obligate the Government to pay money damages. *Greider*, 23 Cl.Ct. at 350.

---

8. An equal protection claim under the Fifth Amendment is beyond this court's jurisdiction since that provision, without more, does not