29 F.3d 607
 Charles SCHINDLER, as natural parent and co-conservator of
Karl Michael Schindler, a minor child,
Petitioners-Appellants,
v.
SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Respondent-Appellee.
 No. 93-5145.
 United States Court of Appeals,
Federal Circuit.
 July 7, 1994.
 
 1
 Lawrence S. Katkowsky, Keller & Katkowsky, P.C., Southfield, MI, argued, for petitioners-appellants.
 
 
 2
 Richard A. Olderman, Atty., Dept. of Justice, Washington, DC, argued, for respondent-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., and Barbara C. Biddle, Atty.
 
 
 3
 Before RICH and SCHALL, Circuit Judges, and COHN, District Judge.*
 
 
 4
 COHN, District Judge.
 
 
 5
 Petitioner, Charles Schindler (Schindler), as natural parent and co-conservator of Karl Michael Schindler, appeals from the judgment of the United States Court of Federal Claims[1], affirming the Special Master's decision dismissing Schindler's petition for compensation under the National Childhood Vaccine Injury Act of 1986 (the Act), 42 U.S.C. Secs. 300aa-1 to 300aa-34 (1988 & Supp. IV 1992). The Court of Federal Claims held that the Special Master correctly determined that proceedings in a Michigan probate court approving a settlement between Schindler and Karl's pediatrician constituted a civil action as that term is used in Sec. 300aa-11(a)(7) of the Act and consequently barred recovery under the Act. Schindler v. Secretary of Dept. of Health & Human Servs., 28 Fed.Cl. 14 (1993).
 
 
 6
 On appeal we are asked to decide whether the settlement and probate proceeding constituted a civil action under the Act. For the reasons which follow, we hold they do not, and we reverse and remand.[2]
 
 BACKGROUND
 A. The District Court Action
 
 7
 On or about February 8, 1976, Karl developed paralytic poliomyelitis, Type 2, which allegedly was caused by ingestion of an oral polio vaccine. Schindler filed an action in the Circuit Court for Wayne County, Michigan, against Lederle Laboratories, the vaccine manufacturer, and the Academy of Pediatrics.[3] The action was removed to the United States District Court for the Eastern District of Michigan. The case proceeded to trial, at which time Dr. Robert Lugg, Karl's pediatrician and the administrator of the vaccine, testified. The trial court entered directed verdicts in favor of both defendants, finding that neither defendant was negligent. The United States Court of Appeals for the Sixth Circuit affirmed. Schindler v. Lederle Lab., 725 F.2d 1036 (6th Cir.1983). Both parties acknowledge that Schindler's unsuccessful action against the vaccine manufacturer did not preclude Schindler from filing a petition under the Act.
 
 B. Probate Court Proceeding
 
 8
 Following the dismissal, Schindler realized that he had a cause of action against Dr. Lugg based upon his trial testimony and began negotiating with Dr. Lugg and his insurance company. Schindler did not file a complaint against Dr. Lugg in any court. Eventually, Schindler and Dr. Lugg agreed on a structured settlement which contained a release and covenant not to sue. Schindler filed a Petition for Appointment of Conservator with the Michigan probate court, stating his son was to receive a settlement for a personal injury claim. In addition, he filed a Petition for Authority to Settle a Personal Injury Claim. On February 15, 1982, the Probate Court for the County of St. Clair, Michigan, filed an "Order for Settlement of a Civil Claim." In its order, which approved the settlement, the probate court stated that Schindler may have a cause of action against Dr. Lugg as a result of medical treatment rendered to Karl.
 
 C. Proceedings under the Vaccine Act
 
 9
 On October 1, 1990, Schindler filed a petition for compensation under the Act in the Court of Federal Claims, alleging that Karl had contracted poliomyelitis from an oral polio vaccine administered by Dr. Lugg in 1975. Schindler also alleged that he had not previously collected an award or settlement of a civil action for damages from a vaccine-related injury. On March 20, 1992, respondent, the Secretary of the Department of Health and Human Services (HHS), filed a motion to dismiss the petition on the ground that because Schindler had already collected a settlement for vaccine-related injuries in the 1982 Michigan probate proceeding, his action was barred by 42 U.S.C. Sec. 300aa-11(a)(7). The Special Master granted HHS's motion to dismiss, holding that the negotiated settlement was a binding, final and complete remedy for a cause of action against Dr. Lugg for Karl's vaccine-related injuries and this served to bar Schindler's action under the Act.[4]
 
 
 10
 In his decision[5], the Special Master adopted a broad definition of the term "civil action," as set forth in Weston v. City Council, 27 U.S. 449, 464, 7 L.Ed. 481 (1829): "any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice, which the law affords him." The Special Master then found that the term "civil action" as used in 42 U.S.C. Sec. 300aa-11(a)(7) encompassed the negotiated, structured, court ordered and approved settlement with Dr. Lugg and constituted a binding, final and complete remedy for a cause of action against Dr. Lugg. The Special Master also relied on the legislative history of the Act, noting that the Congressional intent was to allow only a single recovery and to provide an alternative forum for persons injured by vaccines.
 
 
 11
 The Special Master characterized the probate proceeding as:
 
 
 12
 [A] formal proceeding in a court of justice where the parties appeared with counsel, pleadings were filed, and testimony was taken in open court. The court was empowered to make "a full, final and complete settlement of this claim which will be binding on [the injured child] now and after he has attained his majority." The judge then "Ordered and Adjudged" that Dr. Lugg, through his insurance company, pay $185,000 for the vaccine-related injuries. Furthermore, Dr. Lugg was released and discharged from any future claims or lawsuits arising out of his treatment of the injured child.
 
 
 13
 The Court of Federal Claims affirmed, finding that the Special Master was neither arbitrary nor capricious in considering legislative history to resolve the matter. The Court of Federal Claims stated that, in essence, Schindler was trying to collect twice for Karl's vaccine-related injuries, once from the doctor and once from the government, in contravention of the Act. This appeal followed.
 
 DISCUSSION
 
 14
 This court reviews issues of law de novo. Munn v. Secretary of Department of Health & Human Servs., 970 F.2d 863 (Fed.Cir.1992). In this case, the facts are not in dispute. The sole issue before us on appeal is whether the proceeding in the Michigan probate court constituted a civil action for purposes of the Act. Because that is an issue of statutory construction, we proceed de novo.
 
 A.
 
 15
 The subsection at issue appears at 42 U.S.C. Sec. 300aa-11(a)(7):
 
 
 16
 If in a civil action brought against a vaccine administrator or manufacturer for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition under subsection (b) of this section for such injury or death.
 
 
 17
 The term "civil action" is not defined anywhere in the statute, and the legislative history provides no guidance as to the meaning of the term. Therefore, we look to the common meaning of the term in deciding whether "civil action" encompasses the probate proceeding at issue here.
 
 
 18
 Under Fed.R.Civ.P. 3, a "civil action" is commenced by the filing of a complaint with the court. The term "civil action" is defined in Black's Law Dictionary as an action that "lie[s] in behalf of persons to enforce their rights or obtain redress of wrongs in their relation to individuals; actions to enforce, redress, or protect private rights; [i]n general all types of actions other than criminal proceedings." Black's Law Dictionary 28, 245 (6th ed. 1990). Stroud's Judicial Dictionary defines "civil action" as "litigation in a civil court for the recovery of individual right or redress of individual wrong." Vol. I, Stroud, Judicial Dictionary, (London, Sweet, Maxwell: 1986).
 
 
 19
 The probate proceeding simply does not comport with these definitions. Schindler, by filing the Petition for Conservatorship and the Petition for Approval of Settlement was not seeking to enforce a right or redress a wrong. He was seeking to be appointed as his son's conservator pursuant to Michigan law, M.C.L. Sec. 700.461, in order to administer his son's estate.
 
 
 20
 HHS argues that the probate court proceeding was a civil action because Schindler filed a Petition for Authority to Settle a Personal Injury Claim, the settlement was approved by the probate court, the probate court issued an Order for Settlement of a Claim setting forth the details of the settlement, and the probate court ordered Dr. Lugg to do specific things. Under M.C.L. Sec. 700.484(3)(s), the conservator is vested with the right to settle a claim by the minor's estate without court authorization or confirmation. Thus, the Petition for Authority to Settle a Personal Injury Claim and the Order of Settlement of a Claim signed by the probate court were not required under Michigan law.
 
 
 21
 Probate proceedings are generally considered extraordinary proceedings and are generally not considered civil actions. See Appeal of Slattery, 90 Conn. 48, 96 A. 178 (1915) (appeals from probate are not actions between parties); State v. Mann, 76 Wis. 469, 45 N.W. 526 (1890) (civil suit, as used in U.S. Const. art. VII, Sec. 18, authorizing the legislature to impose a tax in a civil suit, does not include the settlement of an estate in probate); Lanning v. Gay, 70 Kan. 353, 78 P. 810 (1904) (a proceeding in the probate court to establish a will does not come within the category of a "civil action", but is a special proceeding); G.C. Norfolk & Western Ry. Co. v. Foster, 19 Ohio N.P., N.S., 267, 62 Wkly.Law Bull. 122 (1916) (a proceeding in probate court for appropriation of property was a special proceeding and not a civil action).
 
 
 22
 Moreover, it is to be remembered that the statutory provision does not refer simply to a "civil action." Rather, to the extent pertinent here, it speaks in terms of a "civil action brought against a vaccine administrator ..." 42 U.S.C. Sec. 300aa-11(a)(7). The phrase "against a vaccine administrator" is significant, for it shows that Congress intended that in order for a civil action to bar the filing of a petition under the Act, it must be adversarial in nature. Put another way, the civil action must be one in which the parties are in conflict. The use of the word "against" in the statute compels that conclusion. Viewed in this light, it is clear that the Michigan probate proceeding was not a "civil action" within the meaning of section 11(a)(7) of the Act. To begin with, Dr. Lugg was not named as a party in the proceeding. Thus, in form, the proceeding was not "against" Dr. Lugg.[6] Most importantly, however, the proceeding was to obtain the probate court's stamp of approval for the out-of-court settlement between Schindler and Dr. Lugg. Indeed, far from being in conflict, Schindler and Dr. Lugg were in agreement in the matter.
 
 B.
 
 23
 Next, HHS contends that if Schindler is allowed to file a claim and is successful, he will obtain a double recovery for the same injury and thus would undermine one of the purposes of the Act. Clearly, what HHS objects to is the potential for Schindler to collect twice, once from Dr. Lugg, and once from the government. However, the Act does not contain discrete language barring the filing of a petition where a settlement is reached without the filing of a civil action. If Schindler, instead of seeking probate court approval, had merely accepted a settlement and executed a release, this case would not be before us. Moreover, HHS could not have objected to the filing of a petition under the Act if Karl had been an emancipated minor and issued a release without commencing a lawsuit in any court. In short, HHS is asking us to fill in a gap in the statute by ruling that if a vaccine-injured party obtains a settlement from a vaccine administrator or manufacturer without a lawsuit, the party is barred from filing a petition under the Act. This we cannot do, however, for the Act contains no such prohibitions. In VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1579 (Fed.Cir.1990), we stated that:
 
 
 24
 It is axiomatic that statutory interpretation begins with the language of the statute. If, in a given case, the words of the statute do not provide an answer, then a court has no choice but to fill in the interstices. If, on the other hand, the language is clear and fits the case, the plain meaning of the statute will be regarded as conclusive.
 
 
 25
 (citations omitted).
 
 
 26
 As discussed above, the statute clearly refers to "civil action" as an action brought against a vaccine administrator or manufacturer. Accordingly, we regard the plain meaning of the statute as conclusive.
 
 
 27
 Finally, HHS contends that under the circumstances of this case, the statutory scheme of the Act is defeated by the release clause in the settlement agreement. Section 300aa-17(a) of the Act provides that: "[u]pon payment of compensation to any petitioner under the Program, the trust fund which has been established to provide such compensation shall be subrogated to all rights of the petitioner with respect to the vaccine-related injury or death for which compensation was paid ..." Thus, HHS argues that if Schindler is allowed to recover under the Act, the government's right to subrogation is extinguished because the settlement agreement released and discharged Dr. Lugg for Karl's injuries.
 
 
 28
 We agree that the inevitable result of allowing Schindler to file a petition under the Act frustrates the government's ability to recover from Dr. Lugg. However, such a result is not unique to this case. Anytime a settlement is made for a vaccine-related injury and a release is given, the government's right to subrogation is defeated. This is the natural consequence of the failure of the Congress to make settlements, absent the commencement of a civil action, a bar against the filing of a petition. It is the Congress that must provide the remedy to this perceived deficiency in the Act, not the court.[7]
 
 CONCLUSION
 
 29
 For the reasons stated above, the decision of the Court of Federal Claims is reversed. The case is remanded to the Court of Federal Claims with instructions to reinstate Schindler's petition.
 
 COSTS
 
 30
 Each party shall bear its own cost.
 
 
 31
 REVERSED and REMANDED with INSTRUCTIONS.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Federal Courts Administration Act of 1992, Pub.L.No. 102-572, Sec. 902(a), 106 Stat. 4506, 4516, changed the name of the United States Claims Court to the "United States Court of Federal Claims." Although the proceedings spanned the time of this name change, for consistency we refer to the court throughout as the Court of Federal Claims
 
 
 [2]
 Because we find that Schindler is entitled to file a claim under the Act, we do not address his equal protection argument
 
 
 [3]
 The Academy compiles a reference book (the "Red Book") for physicians containing warnings concerning the administration of an oral polio vaccine
 
 
 [4]
 In a Vaccine Act proceeding, questions of liability and damages are adjudicated in the first instance by a Special Master. 42 U.S.C. Sec. 300aa-12(d)(3). On motion by a party, the Court of Federal Claims reviews the record of the proceedings and may uphold the findings of fact and conclusions of law of the Special Master and sustain the Special Master's decision or set aside any findings of fact or conclusions of law found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and issue its own findings of fact and conclusions of law. 42 U.S.C. Sec. 300aa-12(e)(2)
 
 
 [5]
 The Special Master's decision is reported at 1992 WL 279250, 1992 U.S.Cl.Ct
 LEXIS 467 (1992).
 
 
 [6]
 In Schumacher v. Secretary of Department of Health & Human Services, 2 F.3d 1128, 1135 (Fed.Cir.1993), this court noted that the legislative history of Sec. 300aa-11(a)(5) (pending civil action must be dismissed before person may file a petition) refers to a civil action as a "tort action against a manufacturer." The Schumacher court also noted that the "legislative history indicates that the phrase 'civil action' in each provision of Sec. 300aa-11(a) other than (3) ... means a civil action against a vaccine administrator or manufacturer." Id
 
 
 [7]
 We express no opinion as to whether the government, if Schindler is successful on his claim, is entitled to a credit in the amount received by Schindler under the settlement with Dr. Lugg